IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

*Electronically Filed*

DANIELLA BLAINE, Adminstratrix of the estate of KENNETH H. CROSS, II, Deceased )

Plaintiff, )

v. ) Case No. 3:13-cv-427-S

CORIZON, INC., ET AL. )

Defendants. )

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO NARCAN/NALOXONE**

## I. INTRODUCTION

This case arises from the medical care and treatment of Mr. Cross received while incarcerated at the Louisville Metro Department of Corrections on August 25, 2012. In sum, Mr. Cross died of acute intoxication several hours after intake. Plaintiff claims that the Defendants were medically negligent and deliberately indifferent to Mr. Cross' medical needs.

According to Plaintiff's Federal Rule of Civil Procedure 26(a)(2) expert disclosure, Plaintiff will attempt to introduce evidence at trial regarding Narcan. Naloxone, commonly referred to under the brand-name Narcan, is a medication that can

quickly block the effects of opioids in the body and has recently gained notoriety for its use in preventing death from drug overdose. Based on both of Plaintiff's expert reports, it is anticipated that Plaintiff will make a causation argument with respect to Narcan, specifically: had Mr. Cross been administered prior to going into cardiopulmonary arrest, he would have survived.

## II. ARGUMENT

Any references to Narcan or Narcan's potential to save Mr. Cross's life must be excluded because they will create a collateral issue and will only serve to mislead the jury. Before expert testimony is admitted, "the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Federal Rule of Evidence (FRE) 702). Additionally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury, . . . ." FRE 403.

Among other theories as to causation, Plaintiff's position is that Mr. Cross died because Narcan was not administered prior to cardiopulmonary arrest. Nonetheless, inherent in this causal theory is that Defendants breached the standard of care by not administering Narcan prior to cardiopulmonary arrest. Plaintiff cannot argue causation without showing a relevant breach. Plaintiff's experts testified at deposition that Defendants did not breach the standard of care with respect to Narcan; therefore, because any Narcan theory of negligence is untenable at trial, any causation argument regarding

Narcan would inject a collateral issue and fail to assist the jury.

Dr. George Rogers is one of Plaintiff's two expert witnesses expected to testify regarding Mr. Cross's medical treatment. In his Expert Report, incorporated into Plaintiff's expert disclosure, Dr. Rogers stated, "I am very confident in saying that had Mr. Cross been administered Narcan at either the jail or in the emergency department prior to going into cardiopulmonary arrest, he would almost certainly have survived, and survived without residual effects or damage." *See George C. Rogers, Jr., M.D. Expert Report* (attached as exhibit 1). However, Dr. Rogers makes no reference in his report to any standard of care regarding jails to possess or utilize Narcan in August 2012 when this incident occurred. *Id*. Nonetheless, at deposition, Dr. Rogers testified as follows:

> Q: In any of the jail cases that you've worked on, has Narcan been present in the jails?
>
> A: No. Not that I'm aware of. And I don't - - my assumption is that it's not present at the Louisville jail. It certainly - - God help us, I hope it is by now.
>
> Q: Yeah. See, because that's the thing. This case here, we're talking about 2012.
>
> A: I know. <u>No, I don't expect that it was there in 2012</u>. If somebody asked me, I think it should have been, <u>but it wasn't probably the standard</u>.

See *Deposition of George C. Rogers, Jr., M.D., pages 104-105* (attached as exhibit 2). There, Dr. Rogers testified that it was not the standard of care for a correctional medical provider at a Louisville jail, such as the Louisville Metro Department of Corrections, to posses Narcan in 2012. While he believes it "should have been" present in 2012 and that it may be the

standard today, Dr. Rogers specifically testified that a Louisville jail possessing Narcan in 2012 was not "the standard."

APRN Cindy Kovacs-Whaley is Plaintiff's second medical expert. In her Expert Report, incorporated into Plaintiff's expert disclosure, APRN Kovacs-Whaley stated:

> Narcan is now being supplied to law enforcement officers and jail officers in some states . . . . Had Narcan been administered to Mr. Cross before he stopped breathing, I see nothing to indicate that he would not have survived. However, I note that Narcan apparently was not on-site at [Louisville Metro Department of Corrections] when Mr. Cross was there in 2012, even though it was available at the time and its beneficial effects were already established.

*See Cindy H. Kovacs-Whaley, APRN Expert Report, page 7* (attached as exhibit 3).

Like Dr. Roger's Report, APRN Kovacs-Whaley's expert report does not state that the standard of care applicable to Corizon required it to have Narcan on site in 2012. She conceded several clarifying points at deposition. When asked when her own employer , Rutherford County Sheriffs Department, began using Narcan, APRN Kovacs-Whaley could not be sure if it was before or after 2012. *See Deposition of Cindy H. Kovacs-Whaley, pages 45-46* (attached as exhibit 4). Furthermore, she testified that she believed neither the American Correctional Association nor the National Correctional Commission on Health Care–two principle jail accrediting association–required the presence of Narcan for certification purposes. *Id. at pages 50, 51*. Finally, she went on to testify as follows:

> Q. It's not your opinion in this case that the standard of care applicable to jails like the one in Louisville called for them to have Narcan on site, is it?
>
> A. No. There is other -- at that time, they should have. But at that time, more jails were just calling 911 under the

> same circumstances sending patients to the E.R. Now, we can do Narcan. And then if we have to or not have to make that decision. It's just -- we have other resources.

*Id. at pages 52*. Thus, both of Plaintiff's experts agree that it was not the standard of care for Corizon to utilize Narcan in 2012. Plaintiff, therefore, cannot argue at trial that Defendants breached our standard of care by not having Narcan on site in 2012 or by not administering Narcan to Mr. Cross on August 25, 2012.

Several other sources corroborate Plaintiff's experts' opinion that utilizing Narcan was not the standard of care for jail facilities in 2012. In 2013, the Kentucky General Assembly enacted Kentucky Revised Statute (KRS) 217.186, which regulated the prescription of Naloxone/Narcan for the first time in Kentucky. 2013 Kentucky Laws Ch. 118 § 10 (HB 366). Further, it was not until 2015 that the General Assembly amended KRS 217.186 to permit peace officers, jailers, firefighters, paramedics, emergency medical technicians, or school employees authorized to administer medication under KRS 156.502 to receive a prescription for, possess, and administer Naloxone/Narcan. 2015 Kentucky Laws Ch. 66 § 8 (SB 192).

Moreover, the National Correctional Commission on Health Care released a Position Statement on Narcan on April 12, 2015. The NCCHC found that in 2014 the Food and Drug Administration had approved a delivery device for Naloxone/Narcan that "can be safely used by nonmedical personnel [and this] has resulted in expanded access to this life-saving drug." *See Naloxone in Correctional*

*Facilities for the Prevention of Opioid Overdose Deaths* (attached as exhibit 5). The NCCHC also recommended that correctional and medical staff undergo training on opioid overdose and the correct technique to administer Naloxone/Narcan. In other words, the NCCHC–a principle credentialing and regulating body of correctional medical providers–only recommended Narcan training nearly three years after this incident occurred.

Finally, Defendant's recently disclosed correctional nursing expert, APRN Lori Roscoe, stated in her Expert Report that "in 2012, and even today, having narcan available in the medical unit is not the standard of care in jail facilities." *Lori E. Roscoe, APRN Expert Report Letter page 5* (attached as exhibit 6). APRN Roscoe went on to explain that the standard of care for a patient who is exhibiting overdose symptoms in a jail facility is to contact emergency medical services. *Id*. Therefore, every expert who has addressed this issue agrees: it was not the standard of care for a jail facility to possess or administer Narcan in 2012.

Because Plaintiff is foreclosed from arguing a theory of negligence based on Narcan, any Narcan causation argument would mislead the jury. If Plaintiff is permitted to argue to the jury that Narcan would have saved Mr. Cross's life, the jury will unduly blame the Defendants for failing to administer it. However, even according to Plaintiff's own experts, the Defendants were not negligent for not possessing Narcan in 2012 and thus they had no duty to administer it. Therefore, to avoid injecting a collateral issue at trial and because such expert

testimony will not assist the jury to decide a relevant issue, any reference to Narcan should be excluded at the outset.

## III. CONCLUSION

The recent development and widespread use of Narcan is a tremendous advantage in the fight against opioid overdoses. It will save countless lives. Furthermore, it is reasonable to speculate that had Mr. Cross been treated with Narcan, he might have survived. However, it is just as reasonable to speculate that had Mr. Cross been surrounded by a team of doctors and emergency medical equipment at the moment of overdose, he might have survived. Neither of those levels of care represent the proven standard of care in this case. Improvements in medical care, coupled with reasonable implementation, will perpetually increase the standard of care owed to patients. However, it is axiomatic that a defendant-provider must be judged against the standards of care relevant to when care was provided. Without such a baseline level of justice, medical negligence cases would become impossible to defend.

For the reasons stated above, based on Plaintiff's own expert testimony, any reference to Narcan would create a collateral issue and unduly mislead the jury in violation of FRE 403 and 702. Any reference to Narcan must be excluded from evidence at trial.

Respectfully Submitted,

 */s/ Sean Ragland*
Sean Ragland
Nicholas R. Hart
PHILLIPS PARKER ORBERSON & ARNETT, PLLC
716 W. Main Street, Suite 300
Louisville, Kentucky 40202
(502) 583-9900
sragland@ppoalaw.com
nhart@ppoalaw.com
*Counsel for Defendants Corizon, Inc., Stephanie Kohl, Ada Daugherty, and T.J. Sloan*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on the 3rd day of October, 2016:

Gregory A. Belzley
Belzley Bathurst, Attorneys
P.O. Box 278
Prospect, Kentucky 40059

Paul Brizendine
Water Tower Square
300 Missouri Ave., Suite 200
Jeffersonville, IN 47130

Denis Ogburn
Assistant Jefferson County Attorney
531 Court Place
Suite 900 Fiscal Court Bldg.
Louisville, KY  40202

 */s/ Sean Ragland*