UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DANIELLA BLAINE, Administratrix of the
Estate of Kenneth H. Cross, II,                                        Plaintiff,

v.                                                      Civil Action No. 3:13-cv-427-DJH-DW

LOUISVILLE METRO GOVERNMENT,
et al.,                                                                Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniella Blaine alleges that her brother, Kenneth H. Cross, II, died as a result of negligence and deliberate indifference by Defendants Corizon, Inc.; Corizon employees Stephanie Kohl and T.J. Sloan (collectively the "Corizon Defendants"); and Louisville Metro Department of Corrections (LMDC) Director Mark Bolton while Cross was in custody at an LMDC facility. As administratrix of Cross's estate, Blaine asserts violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, as well as state-law claims of negligence, gross negligence, and wrongful death. (Docket No. 1) The Corizon Defendants have moved for summary judgment as to the § 1983 claims. (D.N. 97) Bolton seeks summary judgment on the negligence and wrongful-death claims, which are the only remaining claims against him. (D.N. 101) For the reasons explained below, the Court will grant the Corizon Defendants' motion, dismiss Blaine's state-law claims without prejudice, and deny Bolton's motion as moot.

I.      BACKGROUND

Cross was arrested by Louisville Metro Police Department officers and taken into custody at 4:00 p.m. on August 25, 2012. (D.N. 98-1) After being booked at LMDC, he was given a medical assessment by Defendant Kohl, a licensed practical nurse. Kohl's initial notes from that interview state that Cross stumbled up to the medical station; that he told Kohl he had

1

drunk half a beer that day and took Xanax and Lortab for pain; that his speech was slurred and rambling and he smelled strongly of alcohol; that he "appeared to fall asleep several times during his interview"; and that he had suffered a head injury in a car accident several years prior. (D.N. 98-2) Kohl testified at her deposition that she suspected Cross had consumed more than half a beer and that it was "possible" he'd taken drugs as well. (D.N. 109-3, PageID # 853; *see id.*, PageID # 794-75, 816)

Based on her evaluation, Kohl placed Cross "on detox," with instructions that he be assigned a bottom bunk for safety reasons. (D.N. 98-2) In addition, given his "level of functioning," Kohl referred Cross to an observation cell for further monitoring. (*Id.*) According to the Substance Abuse Withdrawal Flowsheet completed by Kohl, Cross's vital signs were normal as of 5:07 p.m. (D.N. 98-3) Although Corizon's policy was for inmates with alcohol or drug issues to be assessed and managed by a physician or "other qualified health professionals" (D.N. 109-6, PageID # 1044), Kohl was not required to contact a physician or advanced practice registered nurse until the end of her shift approximately six hours later. (*Id.*, PageID # 1047-49; D.N. 109-3, PageID # 788; D.N. 109-7, PageID # 1177)

Cross was placed in an observation cell on the second floor of the jail, where Kohl's supervisor, Defendant Sloan (a registered nurse), was working. (D.N. 109-3, PageID # 785-86; D.N. 109-7, PageID # 1100, 1110, 1120) LPN Ada Daugherty encountered Cross when he arrived on the second floor; at her deposition, Daugherty "recalled that [Cross] was a 'jovial' person [who] 'actually hit on' her as he walked past" and that "[w]hen she asked if he was alright, he said that he was and that he was just ready to take a nap."[1] (D.N. 109-2, PageID #

---

[1] Daugherty was named as a defendant in this case; however, the claims against her have been dismissed by agreement of the parties. (*See* D.N. 67; D.N. 69) The Corizon Defendants' motion erroneously indicates that it is filed on behalf of Daugherty in addition to Kohl, Sloan, and Corizon. (*See* D.N. 97)

2

747) Soon after Cross's arrival, Sloan saw him eating the meal provided by the jail. (D.N. 109-7, PageID # 1142) She later heard him snoring loudly. (*Id.*, PageID # 1148)

At 8:50 p.m., LMDC Officer Kevin Lamkin was notified by an inmate work aid that "there[ was] something wrong with" Mr. Cross. (D.N. 109-4, PageID # 936) Lamkin "[i]mmediately" went to Cross's cell, where he found Cross blue-lipped and unresponsive. (*Id.*) Daugherty and Sloan quickly responded and attempted to revive Cross; however, their attempts were unsuccessful, as were the efforts of EMTs who transported Cross to the hospital.[2] (D.N. 109-2, PageID # 749; D.N. 109-7, PageID # 1144-46) Cross died of a drug overdose at 9:33 p.m.[3] (D.N. 109-7, PageID # 1144; D.N. 103-4, PageID # 671)

Blaine filed this action against Kohl, Sloan, Daugherty, Corizon, Bolton, Louisville Metro Government, LMPD chief Steve Conrad, and two LMPD officers, alleging Fourteenth Amendment violations under § 1983 as well as negligence, gross negligence, and wrongful death under state law. (D.N. 1) At this point in the litigation, the only claims remaining are the § 1983 and state-law claims against the Corizon Defendants and the state-law claims against Bolton. (*See* D.N. 18; D.N. 59; D.N. 69) The Corizon Defendants seek partial summary judgment as to the § 1983 claim (D.N. 97), and Bolton has moved for summary judgment on the state-law claims. (D.N. 101)

---

[2] After learning from Sloan that LMDC staff were performing CPR on Cross, Kohl drafted a second medical assessment (D.N. 98-4), purportedly to "make sure that as a nurse [she] had everything [she] needed." (D.N. 109-3, PageID # 803) In the most notable amendment, Kohl stated: "Multiple times during this interview I questioned [Cross] if he had consumed any substance where [Cross] denied on multiple occa[s]ions only to drinking one beer [sic]. [Cross] stated he was fine, he had been up all day and had not slept and wanted to lie down." (D.N. 98-4) Although the amended assessment does appear to be, as Blaine puts it, "a rather clumsy, transparent, manufactured attempt at 'CYA'" (D.N. 103, PageID # 648), it is not relevant to the deliberate-indifference analysis.

[3] An autopsy showed that Cross's death resulted from "the combined effects of methadone, alprazolam[,] and diazepam." (D.N. 103-4, PageID # 671)

3

## II. ANALYSIS

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of her claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Blaine fails to do so here.

### A. Claims Against Nurses Kohl and Sloan

Blaine maintains that Cross's death was the result of deliberate indifference by Kohl and Sloan. (*See* D.N. 103, PageID # 652-57) "The Eighth Amendment 'forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs.'" *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Due Process Clause of the Fourteenth Amendment extends this protection to pretrial detainees. *Id.* (citation omitted). To be found deliberately indifferent, "an official must have actually perceived a significant risk to an inmate's health"; "[a]n official's failure to alleviate a significant risk that [s]he should have perceived but did not" does not constitute "the infliction of punishment" for

purposes of the Eighth Amendment. *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

A claim of deliberate indifference based on denial of medical care has both objective and subjective elements. *Jones*, 625 F.3d at 941 (citing *Blackmore*, 390 F.3d at 895). With respect to the objective element, a plaintiff must demonstrate "the existence of a 'sufficiently serious' medical need," *id.* (quoting *Farmer*, 511 U.S. at 834), while the subjective element requires a showing that prison officials acted with "a sufficiently culpable state of mind," i.e., deliberate indifference. *Id.* (citing *Farmer*, 511 U.S. at 834) "[T]o prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Id.* (citing *Farmer*, 511 U.S. at 837). Thus, "[i]t is not enough that there was a danger of which an offic[ial] should objectively have been aware. 'The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 837).

Here, the parties' dispute focuses on the subjective element. (*See* D.N. 98, PageID # 600; D.N. 103, PageID # 651-56) The Corizon Defendants argue that they "had no actual knowledge that Mr. Cross had somehow ingested a lethal amount of drugs" (D.N. 98, PageID # 600) and that there is no evidence they "disregarded . . . any substantial risk to Mr. Cross's health." (*Id.*, PageID # 601) Although this argument mischaracterizes the applicable standard insofar as it suggests that actual knowledge of the overdose is required, the Corizon Defendants are correct that Blaine has failed to make the necessary showing.

The proof, viewed in the light most favorable to Blaine, reveals that Kohl concluded Cross was intoxicated and directed treatment accordingly, and that Sloan went along with Kohl's

5

assessment. Although a prison official "would not escape liability if the evidence showed that [s]he merely refused to verify underlying facts that [s]he strongly suspected to be true, or declined to confirm inferences of risk that [s]he strongly suspected to exist," *Farmer*, 511 U.S. at 843 n.8, there is no evidence that that is what occurred here. Indeed, Blaine inadvertently concedes that Kohl lacked the requisite culpability. She asserts:

> Mr. Cross was obviously intoxicated, and Kohl believed he was not only drunk but *possibly* drugged. But she spent barely fifteen (15) minutes assessing him, and a lot of that time Mr. Cross was nodding off and Kohl was having to repeat her questions. *She had no training or qualifications to assess his level of intoxication, or to determine what was causing it, or to decide what to do about it.*

(D.N. 103, PageID # 655 (emphasis added)) Thus, by Blaine's own admission, Kohl could not have "draw[n] the inference" that Cross had overdosed, because she lacked the training and qualifications to do so. *Farmer*, 511 U.S. at 837.

Blaine likewise fails to show that Sloan drew the necessary inference. She faults Sloan for failing to "mak[e] any inquiry"—such as "assessing Mr. Cross herself, questioning Kohl further, or just asking to see her paperwork"—and instead "simply rel[ying] on what she was told by the unqualified LPN who had assessed him, and let[ting] him 'sleep it off' even though he was exhibiting signs of respiratory distress before he died." (D.N. 103, PageID # 656) But elsewhere in her response brief, Blaine observes that Corizon's policies and training do not address unconsciousness (*id.*, PageID # 644), and that under those policies, "if an inmate had been assessed by a nurse and deemed to be 'stable'" (as Cross was here), he "could go upstairs and 'sleep it off.'" (*Id.*, PageID # 647 (citing Pennington Dep. at 49)) Blaine does not offer any evidence that Sloan thought Cross could be suffering from a drug overdose. On the contrary, Blaine describes Sloan as "clueless," pointing to Sloan's testimony that she was not aware that

6

someone exhibiting symptoms like Cross's who began snoring loudly might have overdosed.[4] (D.N. 103, PageID # 646 (citing Sloan Dep. at 67-68))

Blaine presents no evidence, nor does she even argue, that Kohl or Sloan knew or "strongly suspected" that Cross had overdosed.[5] *Farmer*, 511 U.S. at 843 n.8. Again, "it is not enough for [Blaine] to demonstrate a question of fact [as to] whether [Kohl or Sloan] *should have* known" Cross's true condition. *Watkins*, 273 F.3d at 686. Rather, the nurses "must have *actually perceived* a significant risk to [Cross]'s health to have violated his constitutional right."[6]

---

[4] Blaine makes much of the fact that Sloan knew Cross was snoring loudly, but as Blaine acknowledges, loud snoring is commonly associated with other conditions in addition to overdose—including obesity, from which Cross also suffered. (*See* D.N. 103, PageID # 646; D.N. 103-4, PageID # 662 (autopsy report describing Cross as obese)) Sloan's failure to identify or investigate the actual cause of Cross's snoring does not amount to deliberate indifference. *See Rouster*, 749 F.3d at 451 (finding no deliberate indifference where inmate's symptoms "were consistent with the symptoms experienced by an individual going through alcohol withdrawal" and nurse treated them accordingly). It is undisputed that Sloan responded promptly and appropriately when she learned that Cross's condition was serious. *Cf. id.* at 453; *Jones*, 625 F.3d at 945-46.

[5] Kohl's testimony, even as characterized by Blaine, suggests that Kohl "suspected" that Cross "may . . . have taken some drugs," not that he might have overdosed. (*See* D.N. 103, PageID # 640 (citing Kohl Dep. at 28-29, 86-87))) This is not enough to establish deliberate indifference. *See Weaver v. Shadoan*, 340 F.3d 398, 411 (6th Cir. 2003) ("Plaintiff's contention that the [o]fficers 'believed' or 'should have known' that Weaver had swallowed drugs does not give rise to a deliberate indifference claim.").

[6] Blaine cites *Clark-Murphy v. Foreback*, 439 F.3d 280 (6th Cir. 2006), for the proposition that "when the issue is deliberate indifference, the question on summary judgment is whether the defendants '*could* have perceived a substantial risk of serious harm to [the plaintiff]. Whether *in fact* they perceived, inferred or disregarded that risk *is an issue for trial*.'" (D.N. 103, PageID # 650 (alterations and emphasis by Blaine) (quoting *Clark-Murphy*, 439 F.3d at 290)) To the extent the Sixth Circuit suggested in *Clark-Murphy* that a plaintiff who alleges deliberate indifference need not demonstrate that the defendant actually perceived a risk (or demonstrate a genuine dispute of material fact to that effect on summary judgment), it is inconsistent with the standard set by the Supreme Court in *Farmer*. *See* 511 U.S. at 838. In any event, it was obvious from the evidence presented in *Clark-Murphy* that the defendants were aware that the inmate—who ultimately died of dehydration—needed psychological care, and several also knew that the water to the inmate's cell had been turned off and that he had asked for water. *See* 439 F.3d at 287-89. Those facts, unlike the evidence presented here, easily established a genuine dispute of material fact as to the subjective-awareness prong. *See id.*

*Rouster*, 749 F.3d at 446 (emphasis added) (citing *Farmer*, 511 U.S. at 838). The evidence does not show that they did.

Nor was drug overdose such an obvious explanation for Cross's symptoms that Kohl and Sloan can be presumed to have known that was the problem. *See id.* at 447 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (citing *Farmer*, 511 U.S. at 842)). Cross told Kohl that he had drunk half a beer, took Xanax and Lortab for pain, had a history of head injury, and hadn't slept. (D.N. 98-2; D.N. 109-3, PageID # 829-30) He also smelled strongly of alcohol. (D.N. 98-2) Under the circumstances, Kohl concluded (albeit incorrectly) that Cross was merely intoxicated, as are "many people [who] come through the jail." (D.N. 109-3, PageID # 850) It is well established that "a pretrial detainee's generalized state of intoxication, without more, is insufficient to establish a serious medical need or an offic[ial]'s deliberate indifference to a substantial risk of serious harm to a detainee." *Border v. Trumbull*, 414 F. App'x 831, 837 (6th Cir. 2011) (citing *Meier v. Cty. of Presque Isle*, 376 F. App'x 524, 528-29 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 255-56 (6th Cir. 2009); *Smith v. Pike Cty.*, 338 F. App'x 481, 4823 (6th Cir. 2009); *Weaver*, 340 F.3d at 410-12; *Watkins*, 273 F.3d at 685-86; *Estate of Abdel-Hak v. City of Dearborn*, 872 F.2d 1023, No. 88-1713, 1989 U.S. App. LEXIS 4609, at *6-*7 (6th Cir. 1989)). Because Kohl took appropriate steps to treat the condition she believed Cross had, she cannot be found to have acted with deliberate indifference. *See Rouster*, 749 F.3d at 447-53 (finding no deliberate indifference where jail nursing staff interpreted inmate's stomach cramps, diarrhea, and bizarre behavior as alcohol withdrawal and treated him accordingly; inmate's symptoms were actually caused by sepsis from a perforated duodenal ulcer); *Jones*, 625 F.3d at 945-46 (finding no deliberate indifference where doctor initially treated inmate for severe constipation based on inmate's

8

stomach pains, weight loss, and difficulty having a bowel movement but pursued further treatment when it became apparent that inmate's condition was more serious).

The facts and arguments presented by Blaine do indicate that Cross was misdiagnosed. (*See, e.g.*, D.N. 103, PageID # 642-43, 645, 649 (citing expert opinion that Corizon Defendants violated standards of care))  However, "[t]he subjective requirement is designed 'to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.'"[7] *Rouster*, 749 F.3d at 446-47 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)); *see also Jones*, 625 F.3d at 945 (explaining that "[n]egligence in diagnosing a medical condition does not constitute unconstitutional deliberate indifference" (alteration in original) (quoting *Bertl v. City of Westland*, No. 07-2547, 2009 U.S. App. LEXIS 2086, at *14 (6th Cir. Feb. 2, 2009))).  In short, "[b]ecause [Kohl and Sloan] did not know that [Cross] suffered from a serious medical ailment, and they instead interpreted his symptoms as indicating a different condition, for which they provided appropriate treatment, they were not deliberately indifferent to his medical needs." *Rouster*, 749 F.3d at 453.

The cases cited by Blaine do not alter this conclusion.  Blaine primarily relies on *Comstock*, which involved an inmate who committed suicide after being removed from suicide watch and returned to the general prison population based on a psychologist's perfunctory

---

[7] Blaine's contention that "an act of gross negligence subsumes one of deliberate indifference," and that the Corizon Defendants have therefore implicitly conceded the deliberate-indifference claims by omitting the negligence claims from their motion for summary judgment (D.N. 103, PageID # 650), is clearly incorrect.  The Sixth Circuit has repeatedly drawn a distinction between the two claims, explaining that deliberate indifference "is a very high standard of culpability, exceeding gross negligence" and "akin to criminal recklessness."  *Jones*, 625 F.3d at 947 (citations omitted); *see also Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) ("Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc); *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976))).

9

evaluation. *See* 273 F.3d at 698-99. Pointing to *Comstock*, Blaine argues that Kohl and Sloan may be held liable based on Kohl's fifteen-minute assessment of Cross and Sloan's failure to independently assess his medical condition. (*See* D.N. 103, PageID # 654-55) In *Comstock*, however, the psychologist already knew the inmate was suicidal, because he had made that finding himself just the day before and placed the inmate on suicide watch as a result. *See* 273 F.3d at 704. The psychologist was also aware that the inmate had been "having problems with other inmates, which was at least one source of [his] suicidal urge." *Id.* The question in *Comstock* was whether the psychologist's "cursory evaluation" of the inmate on the second day constituted deliberate indifference in light of the knowledge he possessed from his first evaluation the day before. *Id.* On the facts presented, the Sixth Circuit concluded that the psychologist "subjectively perceived the risk of serious harm to" the inmate when he undertook the second evaluation. *Id.* at 706. Here, in stark contrast, Kohl did not begin her assessment of Cross with knowledge that he had overdosed, nor was Sloan aware that Cross was at substantial risk of overdosing.[8]

Blaine also cites *Finn v. Warren County*, No. 1:10-CV-016, 2012 U.S. Dist. LEXIS 104936 (W.D. Ky. July 27, 2012), noting that there, "the Court denied summary judgment for a nurse who was aware of an inmate's alcohol withdrawal, but did nothing more than allow him to be placed in an isolation cell where he would be checked every 15-20 minutes by deputy jailers." (D.N. 103, PageID # 654-55) In *Finn*, however, the nurse in question "was aware that [the inmate] was exhibiting characteristics of a life-threatening nature." 2012 U.S. Dist. LEXIS

---

[8] Blaine asserts that "[w]hen Sloan first saw Mr. Cross, he was in at least as bad a condition, if not worse, as when Kohl saw him." (D.N. 103, PageID # 656) Of course, without having seen Cross at the time of Kohl's evaluation, Sloan could not have independently recognized that his condition had deteriorated. And as explained above, to the extent Blaine contends that Sloan should have realized that Cross was suffering from a condition more severe than intoxication, her claim might succeed under a negligence theory, but it fails the deliberate-indifference analysis. *See Rouster*, 749 F.3d at 453; *Jones*, 625 F.3d at 945.

104936 at *37 ("Nurse Price knew that alcohol withdrawal could develop into delirium tremens, and that such a development could be life-threatening. She further knew that the symptoms of such a development included tremors, sweats, possible delirium, slurred speech, abnormal vital signs, weakness, and dizziness, and that Finn was exhibiting several of these symptoms."). Here, as Blaine herself acknowledges, Kohl and Sloan did not recognize Cross's symptoms as potentially life-threatening, nor had they been trained to do so. (*See* D.N. 103, PageID # 655, 646)

In sum, Blaine has failed to establish a genuine issue of material fact regarding her claims of deliberate indifference against Kohl and Sloan. At most, the evidence establishes that Kohl failed to recognize that Cross had overdosed and Sloan failed to conduct her own investigation. Sixth Circuit law is clear that mere negligence or a misdiagnosis does not amount to deliberate indifference. *See Rouster*, 749 F.3d at 447; *Jones*, 625 F.3d at 945. Summary judgment is therefore warranted as to Blaine's § 1983 claims against Kohl and Sloan.

### B. Claims Against Corizon

In the absence of an underlying constitutional violation, Blaine's § 1983 claims against Corizon also fail. To prevail on a § 1983 claim against a private corporation that provided prison medical services, "a plaintiff must prove both 'that his or her constitutional rights were violated and that a policy or custom of the [corporation] was the moving force behind the deprivation of the plaintiff's rights.'" *Rouster*, 749 F.3d at 453 (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 254-55 (6th Cir. 2010)). Thus, Blaine's failure to establish deliberate indifference on the part of Kohl or Sloan requires summary judgment for Corizon on the § 1983 count as well. *See id.* at 454 (finding no need to "consider whether Secure Care's staffing or training policies might have caused [a constitutional] violation" where plaintiff had failed to establish that any such violation occurred).

11

### C. State-Law Claims

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)). Because Blaine's § 1983 claims will be dismissed, the Court declines to exercise supplemental jurisdiction over her claims of negligence, gross negligence, and wrongful death. *See* 28 U.S.C. § 1367(c)(3). Blaine may pursue these claims in state court. *See Rouster*, 749 F.3d at 454.

### III. CONCLUSION

While the facts presented by Blaine suggest negligence, they fall far short of establishing deliberate indifference. As the underlying deliberate-indifference claims fail, so too do the § 1983 claims against Corizon, leaving the Court without supplemental jurisdiction over the remaining state-law claims. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The Corizon Defendants' motion for partial summary judgment (D.N. 97) is **GRANTED**. Blaine's § 1983 claims against Stephanie Kohl, T.J. Sloan, and Corizon, Inc. are **DISMISSED** with prejudice.

(2) Blaine's remaining state-law claims are **DISMISSED** without prejudice.

(3) Bolton's motion for summary judgment (D.N. 101) is **DENIED** as moot.

(4) A separate judgment will be entered this date.

February 15, 2018

**David J. Hale, Judge**
**United States District Court**